## SUPREME COURT.

### THE PEOPLE OF THE STATE OF NEW YORK agt. CORNELIUS VANDERBILT.

Where an act of the legislature vested in the corporation of the city of New York the title to the soil under the water, and the right to fill in and extend the battery into the river, not exceeding six hundred feet, with a *limitation on the use of the land*, so to be made out of the water, for any purpose except certain *public purposes* therein expressed,

*Held*, that any grant or other conveyance of the land to an individual *for the purpose* of widening a pier and to extend it to the permanent or exterior line, or for any such *private use*, would be void, and would justify the state in claiming an *injunction* to prevent such violation of the conditions imposed upon the corporation.

The power to compel a *removal* of an obstruction after it has been erected, does not prevent an application to the court to *prohibit the erection* of such obstruction before it is completed.

*Held*, also, that if there was no legal authority for the erection of the pier, it was a *nuisance*, and no *evidence* was admissible to show, that though illegal, it would do no harm.

*New York General Term, October,* 1862.

INGRAHAM, BARNARD and CLERKE, *Justices.*

THIS action was brought to restrain the defendant from enlarging a pier known as No. 1, North river, adjoining the battery.

By the court, INGRAHAM, Justice. The right of the defendant to make such enlargement, is claimed under a resolution of the common council, passed in 1853, granting permission to the defendant to widen the pier and to extend it to the permanent or exterior line. The right of the corporation to grant such a permission depends upon their title to the land upon which the pier was to be erected. This claim of title in the corporation is based upon the act of March, 1821, which authorized the corporation to extend the battery into the river not exceeding 600 feet. This act vested in the corporation the title to the soil under the water so to be filled in. If this were all, there would be no question as to the right of the defendant to enlarge the pier, except so far as it might afterwards be restrained by the act of 1857, establishing a new exterior line, and which prohibited the building of piers beyond that line. But the same act which gave the right to fill up to the extent of 600 feet, also contained the limitation on the use of the land so to be made out of the water, by limiting the same " for a public walk, and for erecting buildings and works of defence thereon, but without any power to dispose of the same for any other use or purpose whatever, and without any power of selling it or any part thereof."

This restriction upon the use of the land for any but public purposes of a public walk, or for defence, prevented the corporation from selling or otherwise disposing of any part of the land so to be acquired for any private purpose whatever. Any grant or other conveyance of the land for any such private use would be void, and a breach of that condition by the corporation would justify the state in any legal measures to prevent its violation. Wherever any such attempt is made to use the land for purposes forbidden by the grant, the grantor would have a right to interfere, and an application to the court to prevent such misuse of the land, would clearly be within the province of a court of equity.

People agt. Vanderbilt.

This view of the question at issue is independent of the act of 1857, establishing an exterior line and prohibiting the extension of any piers beyond that line. If it be held that the state could interfere to prevent the breach of the condition in the grant, independent of that law, the passage of that act does not deprive the plaintiffs of such right. It is true that a way is provided by which, after the pier has been erected, it may be removed, but the remedy sought in this action is to prevent the injury to the navigation by prohibiting the erection of the pier. The power to compel a removal of an obstruction after it has been erected, does not prevent an application to the court to prohibit the erection of such obstruction before it is completed.

It is urged for the defendant that this was only filling a portion of the land under water, which was authorized by the act of 1821. The act of 1860 prohibited the filling beyond the exterior line, and was of itself enough to prevent this obstruction of the river. But independent of that statute, it is idle to say that this was the filling up contemplated by the statute, when all the authority of the defendant was under the resolution of the common council, which granted permission to the defendant to widen a pier, and the injunction granted was against erecting the pier which the court found to be unauthorized and a nuisance.

It is also contended that the judge erred at the trial in excluding the evidence offered by him to show that the proposed pier would not be an actual nuisance, but no such question was involved in the issue. It was immaterial whether it would have been an actual nuisance or not. The real question was, whether the erection of the pier was authorized or not. If there was no legal authority for the erection of the pier, it was a nuisance, and no evidence was admissible to show that, though illegal, it would do no harm. In the language of the learned justice, before whom the case was tried, " any encroachment upon a public stream was a purpresture, that is, the making of that private, which

ought to be common to many, and an obstruction in a pub-
lic river is a nuisance, and may be dealt with as such."
Such an erection is a nuisance *per· se*, and needs no evidence
to prove that as a matter of fact, after the erection of it is
shown to be in violation of the law.

I see no ground for interfering with the decision below.
The judgment must be affirmed with costs.

---

## SUPREME COURT.

